Good morning. John DiStefano for the Indirect Purchaser Plaintiffs. The issues in this appeal are first, whether plaintiff state timely state law damages claims under the continuing violation doctrine as applied by this court in Propane on Bank. Second, whether the releases from Propane One bar claims based on post-release purchases, that is claims that accrued after the release period. And third, whether the district court erred by ruling on plaintiff's equitable claims on the basis of redressability and latches, dismissing those claims without any development of the factual record. And the resolution of these... I would help this appellate judge if you would start where, which is always of interest, what do we have to decide? And then what should we decide? The fundamental issue in this case is the issue of accrual, because so many of the other issues that arose in the litigation really stem from the district court's original... Why do we have to do anything more than remand for further consideration in light of our in-bank opinion? Plaintiffs would submit that that would be appropriate, but this court should decide... How many hundreds of pages did we read without a whisper of that? But the court should reverse, the court should reverse the district court's rulings as a matter of law on limitations and the application of the release. Okay, so that's a should. Yes. That's not a must. It's a should. But it would help, you know, if you guys would think about your audience when you write these hundreds of pages. Let me ask you a question. Shouldn't we go ahead right now and say Arizona, they've rejected continuing violations? We should certainly say today, you've got no case against Arizona, right? No, no. The state law... They have expressly rejected continuing violations doctrine, right? The Arizona case, the mayor case, refused to apply to find a continuing violation in the context of a property right, an easement, which is an entirely different context from the antitrust context that we're talking about. But there's no other law, right, on continuing violations in Arizona? Arizona, Arizona harmonizes its law with... Well, that's a general statute that says, you know, harmonies sound a lot of different ways. Let's go next to North Dakota. North Dakota has rejected application of continuing violation. There's some of these that we just ought to boot out now, right? Plaintiffs would disagree. First of all, there are states where it's clearly been adopted. There are seven states... Wait, wait, wait. I'm talking about the ones where it hasn't. Where it hasn't been adopted yet in the presence of a harmonization provision. I'm not to those yet. I'm starting with Arizona. Arizona's explicitly rejected. Easy case, right? No, because... And then next is North Dakota, because they've rejected it for designing construction. Easy case, right? No. Because this is a rule that's very particular to antitrust. Under Zenith Radio... I'm going to tell you right now, there are no North Dakota antitrust cases, right? Not one. Right. Correct? Correct. Okay. So, I don't see the point. Next how about New Hampshire and Tennessee and Vermont? What do you say on those? As New Hampshire, we rely, you know, also on the fact that there's a harmonization provision in the... It's one of the 18 states. Tennessee is silent, but again, I think the analysis needs to begin with the overwhelming weight of precedent. Go to Ashley County. To determine what state law would be, we look at relevant state precedent, analogous decisions, consider dicta, and other reliable data that would foreshadow what the state court would hold. And this court routinely predicts what the state Supreme Court would hold. We have five federal circuits, the 4th, 6th, 8th, 9th, and 11th, that consistently apply the continuing violation doctrine. The leading treatise, Rita Hovenkamp, also does. And to the extent seven states expressly adopt continuing violation doctrine, and virtually all of the rest harmonize their law. Okay. Tell us those seven states while we're doing this exercise. Give us? Yes. Yeah. Can you name the seven states? California, North Carolina, New York, Minnesota, New Mexico, Nevada, and West Virginia. Would you do them one more time? Because I'm in alphabetical order. Go ahead. California, North Carolina, New York, Minnesota, New Mexico, Nevada, and West Virginia. Seven states have adopted it. Eighteen states harmonize their law with the federal as a general principle. So in the absence of authority, really the safe thing to do is simply to apply what the prevailing rule is at the federal level to the states. This is consistent with the general application. It seems to me the safe thing to do is let you sue in those states. Well, federal courts are likely to be, you know, because of the Class Action Fairness Act, are likely to be ruling on these questions regardless. And that's certainly not a that's the court has to predict what the law would be. Whether or not there's been an express holding on point. But to the extent those state law because of Illinois brick on this on these claims, excuse me, are we looking at state are we focused on state law because of Illinois brick? Yes. Yes, exactly. I don't think that was cited in any of the briefs either. Just explain that basic backdrop to why why you're asking us to research the issue in 50 states. It's not 50. We have we've we've joined 22. Yeah, we've joined we've joined plaintiffs in 20 different states. But in the in the event that the state hasn't spoken to this issue specifically, if it harmonizes its law with federal law, that's consistent with the general rule that, you know, the defendant's case is left to the courts, is delegated. And so if the state is drawing on federal law, that's a that's a consistent jurisprudential approach to to, you know, using the experience and wisdom of the courts and relying on that. I would also add that the McKinnon case cited by the defendants does not reject the continuing violation doctrine as it applies here. McKinnon talked about four, four different purchases that violated the antitrust laws. Three of them were ancient, something like 20 years old. And what the court held was that the continuing violation doctrine would not revive those old claims arising from those old purchases. But it did not hold that the new purchase, the recent purchase was time barred. So implicitly, it dismissed that claim on a on a sufficiency of the pleadings, another implicitly, it recognized that that fourth purchase was timely and that in relation back up. I'm sorry to take your time, but it's short on relation back. Are there state law claims besides Maine, Vermont and Wisconsin that you're really arguing about relation back on? No, because we believe all of the claims are timely, we have purchases within the limitations period for all the claims. But, you know, your your relation back argument, I was trying to get to the point, it really only affects those three, right? Think about your view of the case. Right. OK, right. Is it really effective? Is that a yes? It really affects only those three? Yes. Thank you. OK, good. I got it. Now, your six year statute of limitations subclass, does that include people who brought tanks before the propane one settlement so that some of their purchases are covered by propane one? Yes. Settlement. Thank you. Yes. But to turn to the releases, applying the Missouri's Supreme Court's decision in a lack, which the district court did to these releases. There's no Missouri. Missouri is not an Illinois brick repealer state. And it's a leak, by the way, in the elite case, how does it apply? Tell me why we're even in Missouri law. Because this contract is governed by Missouri law, that both the parties in the district court understood that it was concluded for the resolution of a class action that was pending in Missouri. Missouri would seem to have the most the most substantial connection with with the transaction. There's never been a suggestion that another state's law governs the interpretation of this contract. So we're only applying principles of contract interpretation. OK, go ahead. I like, of course, is the gym in a really different situation, protecting consumers and notices and all that. Well, this state is also excuse me. This case is also about protecting consumers and it's about some difficult questions of public policy involved when you're doing releases that impact consumers in the future and the public at large, because we're talking about we're talking about a price fixing conspiracy that harms competition. And, you know, results in illegal, super competitive profits. I meant personal injuries, of course. But go ahead. I got your answer. Now, when you're talking about fill level, fill level, that's not price fixing. Fixing the fill level is the economic equivalent of price fixing, because and this goes back to, you know, suck in the oil and Catalano. It doesn't matter if it's a non price term and not a naked horizontal. You can agree on the fill level for for for customer and retail consumer convenience and then charge different prices. You could, but that's that's not what we allege. We allege that they kept the prices constant and the allegations on that point were already held to be sufficient in in propane on bank, that there was a continuing conspiracy that was a per se violation of the antitrust laws. In any of these cases, you've never identified your experts to say that right at or in bank argument. It was represented by counsel. There were experts who would say that. But you're not at that stage of the ballgames, what you're telling us. I'm sorry, I don't follow. OK, at the in bank argument of propane one, the counsel there said he'd have no trouble finding an expert. I forget his exact words, but that's what he came across to us to say that if you can control the quantity, you control the price. That's short. But but in this case, you're not to that stage yet where you've identified experts. We haven't we haven't identified specific experts because we weren't at the expert disclosure stage. No, just in terms of the litigation process. And I was asking about any of these cases in any of these cases, including the other case. You're not involved in it, are you? The direct purchasers case? Yeah, well, it's been consolidated there, but I'm not representing direct purchasers. That's what I thought. As far as you know, no experts identified in that case. That was my simple question. Not as not as a procedural matter. No, there were there were experts who worked in the in the original propane litigation, propane one. But this issue, as I said, has been has been resolved by the on bank court as far as we're concerned. Both the the Amerigas and Ferrogas releases from propane one apply only to claims that existed at the time of those releases, claims the plaintiffs may have or may have had that were or could have been alleged. And applying the logic of accrual, which, again, the district court agreed governed, the district court just came to the wrong conclusion on accrual. Applying the logic of accrual, each new sale gave rise to a new claim. So to the extent those claims post dated the release, there was no clear and express language that would cover those those post release purchases. This is nowhere more clear than as concerns new purchasers of propane, people who had not purchased propane before the releases were entered into. The defendants don't even attempt to argue that those purchases are subject to the release. But the logic applies the same way to all post release purchases. And again, under Fox Midwest Theaters, it would raise major policy concerns if a release could be used to effectively immunize the defendants for future intentional actions in violation of the antitrust laws, which these continued. I know it's your third argument, but do you really care about the equitable remedy? You've got the FTC doing stuff. You've got all this other stuff going on. Do you. Is that really important in this case? Absolutely. Absolutely. The FTC. Tell us why. Well, the district court's ruling on the redress ability of this case actually contradicts itself. A district court found. That's a legal argument. He asked you a practical question. Oh, well, there are three ways in which this this really does sweeps far more broadly than what the FTC accomplished. First of all, the FTC order does nothing to remedy market division, which is a completely different violation of the antitrust laws and price fixing. The FTC order prohibits only an agreement to raise, fix, maintain or stabilize prices. But if you agree to divide market, divide markets, that's a that's a different anti-competitive action. Sounds to me like you just want the district court to to collaterally review and amend the FTC consent order. Plaintiffs, the consent order is is legally independent of any relief that's obtained in this case. Plaintiffs don't have standing. You know, the difference between collaterally review and direct review. Yes, but plaintiffs don't even want to. You want them to. You want them to collaterally review and improve the FTC consent? No, the plaintiffs are in a different position from the government. The plaintiffs stand in a different position from the public rights that the government is asserting and have different interests, particularly when it comes to to the products that they're purchasing. So end the market allocation, rescind and ban the copacking agreements, which the FTC did not go as far as doing. And finally, mandate that the tanks be returned to their 17 pound fill level and give consumers all the propane that they're paying for. It's no answer to say that the defendants, you know, might charge a higher price for more propane, because if they're already charging a super competitive price, once the propane levels are increased in a competitive market, they won't be able to increase their price further. And it's not a defense to say they'll come up with some other. You're not going to freeze prices forever. I think your argument is too general. But go ahead with your argument. Without any record, the district court didn't have a basis to rule on redressability. And in fact, as I was about to say earlier, its order contradicts itself, because the conclusion that there was an injury to these consumers, an ongoing injury that is impacting them into the future, presupposes that it hasn't been redressed. So to find that each new sale inflicts an injury is inconsistent with the finding that the FTC order did enough. And federal law is clear that an injunction to an injunction must go far enough to actually reverse the impact of antitrust violations. You have to prove Overt X continuing into the future to sustain what you just said about injury. We would have to prove it. The ongoing maintenance without evidence of conspiracy of consistent prices does not violate the law. Propane on bank already held. We have sufficient allegations. Allegations, yes, but you're talking about. And we've had no opportunity to. Have to prove it. We haven't had enough. You're talking as though it just stands to reason. There was no evidence on the injunction. It was dismissed on the pleadings. So we never had an opportunity to prove it. That's why it should be sent back. I see my time is running. I would like to reserve the rest for rebuttal. Is there anything to that to the equitable relief if we explicitly agree with the trial court that courts do not do rate settings such as mandating fill levels? Could you repeat the question? I'm sorry. If we were to specifically uphold the district courts reasoning that it is not a proper judicial exercise of judicial discretion to mandate fill levels of consumer products, is there anything left of your of your equitable claim? Yes, because we also seek to to end the defendant's agreement regarding the vision of markets. And you don't think they read the FTC as ordering them to do that? No, not at all. The FTC knows how to restrict market division activities when it wants to. It's a different antitrust defense under Topco. This is price fixing under Saucony Oil. And in addition, we seek to rescind and ban the copacking agreements, which the FTC didn't go so far as doing. The FTC only only require impose certain restrictions on communication communications between employees that are vague and dubious when it comes to actually enforcing them. If there are no further questions, I'll reserve. May it please the court. Ginger Anders for the athletes. I'd like to start where Judge Logan did, which is to talk about the most straightforward way to resolve this case. And I think the court can affirm the dismissal of all claims in this case on a ground that is supported by the reasoning in the en banc decision.    And that is putting the question of timeliness aside. The plaintiffs here have failed to state a claim for relief under the standards set forth in the en banc decision and in the Supreme Court's decision in Twombly. So the claims here fall into two categories based on when the purchases in question were made. So first, the plaintiff's alleged claim is based on purchases made before 2011. But these same plaintiffs asserted those very same claims against the same 2008 conduct in the Propane One case, and they settled and released those claims. So those claims should be dismissed, and I don't understand plaintiffs to contest that here. The second set of claims is that in an attempt to avoid the effect of that 2011 release, the plaintiffs have repackaged the same allegations based on the same 2008 and 2010 conduct, and they have asserted claims now based on purchases in 2012 and later. But the complaint itself contains no plausible allegations that the conspiracy continues beyond 2010. If you read this complaint, it reads as though it was written in 2010. There are allegations about communications, actions taken in 2008 that this court held since it just suggested an agreement in the en banc decision, but there are no allegations whatsoever beyond 2010 aside from a sort of blanket conclusory allegation that the conspiracy continued. But that sort of blanket allegation— I thought they had gone back and pretty much copied the same that's in the en banc decision. If we compare the words, will we find them about the same or not? I think that's right, Your Honor, and that's actually critical here because there's a critical distinction between the en banc decisions holding that the complaint there stated a claim for relief and this complaint, and the distinction is in the date of purchases. So in a direct purchaser case, to be timely, the direct purchasers only had to allege purchases in 2010, and therefore they had to allege that the conspiracy caused the high prices in 2010 and that the conspiracy continued until 2010. This case is very—so the en banc court held that that complaint had sufficiently done that through 2010. This case is very different, though, because, as I mentioned, because of the release in 2011, the plaintiffs here have to rely on later purchases. So those purchases start in 2012. But when you look at the complaint, there are no allegations whatsoever that the defendants took any actions to communicate with each other about the conspiracy, to enforce the conspiracy. There are no allegations of what the en banc court called the relevant individuals, acts, and conversations that provide enough factual content to actually infer that a conspiracy was continuing to take place. So I think on that ground, this court can affirm the dismissal of all the claims, and we think that would be the course most consistent with judicial economy here. I think it's significant that in the en banc decision itself, the court went ahead and considered the sufficiency of the allegations. That's a legal question that this court can do, and I think that would be a straightforward way to resolve this case. So because the plaintiffs have no allegations of actual actions continuing past 2010, I think the sole thing they're relying on is the idea that once there's an allegation of an agreement at one point in time, we can presume that the conspiracy just continued unless we have evidence to the contrary. And I think that reasoning is irreconcilable with the en banc court's analysis and with principles that both the majority and the dissent agreed on. So principles that all nine judges agreed on. And so the en banc court had to decide whether the plaintiffs there had sufficiently alleged a conspiracy through 2010. So it took that in two steps. The first step was to say, is there a sufficient allegation of an agreement to begin with in 2008? And the court concluded that there was. Then the court said, now we need to consider whether the allegations are sufficient to allow us to infer that the conspiracy continued to 2010. So the court didn't just assume that because there was an allegation of an agreement in 2008 that that must have continued later in time. Instead, the court went through the complaint and it looked for specific actions that would support the inference that the defendants were actually still engaged in the conspiracy beyond 2008. So they didn't simply assume that the conspiracy would continue. So I think that reasoning applies equally here. Here we have allegations that end in 2010 and there is no basis in the complaint to infer that the conspiracy continued beyond that. So I don't think this court can simply assume that the conspiracy continued. Do you agree if super competitive prices were charged in 2012, do you believe that would be a violation or not under our decision and the Supreme Court's decisions? Well, I think the plaintiffs would have to allege that super competitive prices were charged in 2012 and that those prices were caused by the conspiracy itself. And that's what they haven't done here because there's no allegation. There's this time lag between 2010 when we had the last allegations of a conspiracy and then 2012. There's nothing in between to suggest that the conspiracy continued. Is this even true of the Orr complaint? Because the Orr complaint was done later, right? That's correct. And it intentionally parrots a lot of stuff, right? Correct. It's virtually a carbon copy in substantive allegations. And so I think all of these arguments apply equally to the Orr complaints. And that's why this is the argument that would allow the court, as a blanket matter, to affirm the dismissal of all the claims in this case. And we also think that the Sherman Act injunctive claim should be dismissed for reasons that the court was discussing with my friend. I think the parties agree that the burden would be on the plaintiffs to demonstrate that they have some injury that continues despite the existence of the FTC order. And I don't think they have come close to alleging that here. The FTC order itself is extremely broad. It prohibits all price fixing by any means. And just to respond to the discussion of market allocation, I think the plaintiffs themselves, their allegation of market allocation is that it was a market allocation, and I'm quoting from JA 534 here, in furtherance of collusion to maintain prices and fill. So the plaintiff's own theory of market allocation is that it was done in service of a price fixing conspiracy. And I'd also point out about the market allocation, allegations that they suffer from the same flaw as the rest of the complaint, in that they address only conduct in 2008 and 2010. There are no allegations of market allocation. Now, we've talked mostly about the propane case in kind of federal law, but if we get down in the weeds of the state law, we've got Minnesota, New Mexico, Nevada, and West Virginia that have enacted a statute on this. Goodness gracious. So surely there's some kind of continuing violation doctrine that's really important in those states, and don't we at least have to look very carefully at those states? Well, I think the court doesn't need to get to those arguments. Suppose we get there, counsel. Don't dodge the question. Absolutely. Face the question. Go ahead. So yes, I think the court would have to look carefully at these. It would have to go state by state. And I agree. Well, what about those four, though? Minnesota, New Mexico, Nevada, and West Virginia that have statutes. And they've also got harmonization. They've got belt suspenders, all kinds, spandex, everything that they can think to put on to be sure that one side has a shot here. I think that's right. I mean, I think we're not trying to argue that every single state here would necessarily not adopt the continuing violation doctrine. I do think the court would have to go state by state. And if I could just make sort of a broader point about what I think the court should be thinking about in that analysis, I do think that some caution is in order here. And that's for a couple of reasons. Caution before the court tries to predict what all of these states would do. For one thing, we're already in an area where the federal law and state law are deviating. These are states that have decided to allow indirect purchasers to sue for damages despite the fact that federal law doesn't. Federal law considers them too remote. So I think Are there 22 states that have done that? Is that right? I believe that's correct. No, is that approximately right, the 22 number? I believe so, yes. And are they the 22 of the biggest states too? I'm not sure as I stand here, but that would Well, you know, California, New York, I'm about to tell you. Keep going. That certainly wouldn't surprise me. But I do think that Would we have to decide whether each of the 22 states would favor the majority or the dissenting interpretation of the doctrine in our in-bank decision? I don't think so, Your Honor. But why not? Even if you buy into the continuing violation doctrine, a sizable minority of our court thought that this complaint failed. Why wouldn't each state Supreme Court undertake the same analysis and, yes or no, come out the same place? I think that is right. No, it's not just looking for a statute or a case that say, we love the continuing violation doctrine. Well, let me step back for a moment. I think that this court would have to look very carefully at each state to determine what the scope of its continuing violation doctrine might be. And I think that's another reason that this court doesn't need to get there. It's a question of law, though, isn't it, counsel? It is a question of law. It is one that may be more easily addressed by the district court in the first instance because there's so many of these Wait, more easily addressed by the district court is a question of law. You don't offend us too much. Don't offend us too much. I didn't mean to offend you, Your Honor. I'm not too offended. My only point, though, was there was a colloquy about the potential of remand with Mr. DeStefano. And I do think that that would be a potentially inappropriate way of doing this if this court decided that it didn't want to go through all these states itself or decided that if it were going to do that, it would want further briefing on that first. If the court were to decide that, it might be something that Well, they've given us a lot of briefing on it. That is for sure. And it's a high quality briefing, too. So we've had a lot of briefing on that. But I do think there are a couple of reasons to be cautious. In addition to the fact that the states are already deviating from federal law, I think the court should be careful. Courts generally are careful before they expand liability, particularly in the antitrust context, where the states have not clearly done that themselves. So the states have already expanded liability to allow indirect purchasers to sue. But I think there are significant policy questions raised by the question whether indirect purchasers should be allowed to sue on a continuing violation theory based on later in time purchases. That is something that the state might want to look at very carefully because now we're talking about plaintiffs that are remote both in terms of the transaction and in terms of time. And I think more generally, repose is really important in antitrust cases. These are cases in which companies may be engaged in commercial conduct that is entirely consistent with lawful conduct but also could be subject to an allegation of an antitrust violation. And as time goes on, it becomes much harder to marshal the evidence to sort out what is going on in these cases. So I think those are reasons that states may hesitate, may want to think about these issues before they expand liability. And why I think this court should be— Has your research uncovered any federal court that has dealt with an antitrust conspiracy allegation which by reason of Illinois BRIC must be resolved? By state law and a national class action is filed and the court has gleefully undertaken analysis of a difficult antitrust issue state by state. I'm not aware of one as I stand here. And I do think that that is why the Twombly issues here are a much more straightforward way for the court to resolve this case. This is something the court has already looked at in the Ambach decision. I think it's very clear under the principles stated there that the court can look at these claims and say there are no acts, there are no communications, there are no actions in the world that would be inconsistent with unilateral self-interest. There are no allegations like that. These plaintiffs have had ample opportunity to marshal allegations like that. As I mentioned before, they brought the suit originally in 2009 based on this same conduct. They settled and released those claims. And I do think that it's appropriate to keep that in mind here than what actually happened in the world over the past few years as the defendants settled these cases. They paid into multi-million dollar settlement funds. And I think at that point, the understanding was that these claims had been addressed. The FTC investigated a narrower subset of that conduct. And the companies are now subject to that FTC order. I think in light of all of those actions, the plaintiffs would have to point to far more here to raise a plausible inference that there is some conspiracy continuing on, particularly with respect to the prospective relief in the Sherman Act claim. If there are no further questions. Well, I'd like to ask you, on these so-called harmonization statutes, does every state have some kind of harmonization statute? I don't believe they all do. And as you mentioned before. You know about how many do? I don't. Arizona, for instance, has rejected them. But many states do. That's right. Many states do. Many non-Illinois repealer states do, too, of course. Has any state Supreme Court said how strong or how weak they are and addressed it point blank as opposed to deciding it as they're doing something else? I don't believe so. And I think that's because, you know, I think this case provides a good illustration that we're already in an area in which these states are deviating from federal law. So I think that although there are general harmonization, you know, statutes out there, each state presumably has places where it can deviate from federal law as a matter, as a policy matter. And so I think, you know, substantively we are already in one of those areas because these states align. But you believe there's no authority where a state has clearly addressed one of these statutes? That's correct. As I stand here, I'm not aware of any authority that says that or that has addressed that in that way. But they have been cited many times in passing. Right. And I don't have to tell you sort of propositions. Right. And I do think, though, that there is this general principle that courts, federal courts around the country have recognized that there should be, that courts should be cautious before they predict that state courts, state law would expand liability, particularly in the antitrust context. And I think, as I said before, I think that's particularly important to keep in mind here. You're covering a wide range of states and saying that, counsel. That's correct. And I guess that's... Wide set of judicial philosophies, a wide set of attorney generals, a wide set of legislatures. That's exactly right. And so I think, you know, these states may make different policy determinations. And so, you know, that is something I think that, you know, the court would have to be very careful going state by state. And that is why, again, we feel like the Twombly issues are, they're presented here. The complaint is clear. It contains absolutely no allegations that could support an inference of a conspiracy continuing beyond 2010. And so that is the most straightforward way to just resolve all of the claims in this case and affirm the district court's dismissal. All right. There are no further questions. The allegations are sufficient in particular because as respect, as regards to the original agreement to fix the fill levels, we have a very robust story of how that came about. And what happened after that is, and is alleged in the complaint, is that the prices did not decrease. The fill level did not increase. And sales continued into the limitations period. That issue was already resolved in the on-bank. And plaintiffs would add that there's certainly no way to determine on these pleadings that the defendants have withdrawn from the conspiracy, taken the affirmative actions they would need to, to disavow or defeat the inconspiracy. They certainly don't claim to have unwound the conspiracy as best they can or undone its effects. So to that extent, the Twombly argument of whether these consumers state sufficient claims stands on the same footing as the direct purchasers who are also purchasers of propane tanks into the future. Everyone, you know, it's generally known that propane tanks continue to be sold and the allegations are that the conspiratorial effects continue. As far as the questions of state law are concerned, yes, as the court noted, these are pure questions of law that it can determine now rather than on remand. And there are two cases cited in the briefs as examples of federal courts determining what state law of antitrust would be. One, Fond du Lac Bumper Exchange from the Eastern District of Wisconsin and N. Ray Aginox in the District of Connecticut as examples of multi-state antitrust, antitrust suits where state law was decided. If there are no further questions from the panel, I will submit. Well, let me ask you, do you know a case where state Supreme Court has square on addressed the harmonization statute in any context like this? Not specifically as I stand here, no. There are some states where I believe the harmonization was a judicially created mechanism as well. To begin with, yeah. Right. Thank you very much. Thank you, counsel. Case is complex. It's been thoroughly briefed and well argued. And we'll take it under advisement.